IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

HAYNIE SMITH,

      Plaintiff,

    v.                                     Case No. 19-CV-0001

WISCONSIN DEPARTMENT OF
CORRECTIONS, *et al.*

      Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

INTRODUCTION ...................................................................... 4

SUMMARY OF FACTS ............................................................ 4

SUMMARY JUDGMENT STANDARD ...................................... 8

ARGUMENT .......................................................................... 8

I.   Smith's FMLA interference claims must be dismissed on the merits because he was never eligible for FMLA entitlements. .................................................................. 9

     A.   Overview of FMLA definitions, prohibited acts, enforcement, and interpretation. ......................... 10

     B.   Smith's self-care FMLA interference claims must be dismissed. ..................................................... 13

II.  Smith's FMLA retaliation claim must be dismissed because Smith never engaged in FMLA protected activity. ............................................................................ 14

III. In the alternative, the Eleventh Amendment bars Smith's FMLA claims against the Department and Pollard. ................. 15

     A.   Smith's FMLA claim against the Department is barred by Eleventh Amendment sovereign immunity. ..................................................................... 16

     B.   Smith's self-care FMLA claim against Pollard is barred by Eleventh Amendment immunity. ..................... 18

          1.   Smith's individual capacity claim for damages against Pollard is barred by sovereign immunity. 19

          2.   Smith's official capacity FMLA claim against Pollard. ............................................................. 22

IV.  Smith's ADA claims against the Department are barred by the Eleventh Amendment. .................................................. 26

V.   Smith's ADA claims against Pollard must be dismissed. ........... 27

     A.   Smith cannot proceed on an ADA claim against Pollard in his individual capacity. ......................... 27

Case 2:19-cv-00001-NJ   Filed 03/13/20   Page 2 of 33   Document 33

B.      **Smith's official capacity claims under the ADA against Pollard must be dismissed because he does not allege any ongoing violation of the ADA.** .................... 27

VI.     **Smith's ADA claims fail on the merits because he was not a qualified individual with a disability.** ........................................ 28

A.      **Smith's failure to accommodate claim fails.** ...................... 29

B.      **Smith's discriminatory termination claim under the ADA fails.** ..................................................................... 30

C.      **Smith's ADA retaliation claim fails.** ..................................... 32

**CONCLUSION** ............................................................................. 32

3

## INTRODUCTION

Plaintiff Haynie Smith filed this lawsuit against the Wisconsin Department of Corrections and Warden William Pollard. He alleges the Defendants intentionally discriminated against him in violation of Title I of the Americans with Disabilities Act (ADA), violated his rights under the self-care provision of the Family Medical Leave Act (FMLA), and retaliated against him in violation of the ADA and FMLA. (Dkt. 7.) The Defendants now move for summary judgment and dismissal of Smith's claims.

## SUMMARY OF FACTS

A summary of the pertinent facts is included in this section. A full recitation of the facts is contained in the defendants' proposed findings of fact.

Haynie Smith worked as a Correctional Officer for the State of Wisconsin, Department of Corrections (Department or Corrections) from October 19, 2015, until June 7, 2016. (DPFOF ¶ 1.) During the relevant timeframe, Smith worked at Dodge Correctional Institution (Dodge), a maximum-security facility. (DPFOF ¶¶ 14, 17.) At Dodge, Smith was responsible for the security, custody, control, and treatment of inmates. (DPFOF ¶16.)

In March of 2016, Smith required a leave of absence for his own personal health condition and requested leave from March 14 through March 29, 2016, scheduled to return to work on March 30, 2016. (DPFOF ¶¶ 20-22.) But Smith never returned to work and never submitted additional paperwork to request an approved leave of absence. (DPFOF ¶ 23.) What followed in the weeks after the expiration of his

4

approved leave of absence was a series of communications between Smith, his medical providers, and Corrections employees, who worked to determine when Smith could return to work and what he needed, if anything, once he was cleared to return to work. (DPFOF ¶¶ 23-30, 34, 37-40, 43-44.)

On March 29, 2016, Smith spoke with Shauna Uecker, Senior Human Resources Officer at Corrections, and told her he needed to remain off work through April 4th. (DPFOF ¶ 23.) Uecker discussed the possibility of light duty with Smith and he told her he would return a completed fitness for duty certification and a note from his medical provider prior to returning to work. (DPFOF ¶ 23.) On April 6th, Smith submitted a fitness for duty certification stating that he was unable to work through at least April 11, 2016, at which time Smith's psychiatrist could provide another fitness for duty certification. (DPFOF ¶ 25.) When Smith provided an updated fitness for duty certification from his psychiatrist on April 13, 2016, it contained multiple restrictions. (DPFOF ¶¶ 28-33.) Smith needed "at least several months of rehab before considering return to work." (DPFOF ¶ 29.) The certification also stated that when Smith was able to return to work, he needed to "work in [a] low-stress environment" and would "be better at an administrative/desk job." (DPFOF ¶ 30.)

Corrections personnel carefully evaluated Smith's April 13, 2016 fitness for duty certification but had many questions. (DPFOF ¶¶ 31-34.) For one thing, Smith's psychiatrist was unable to provide an estimated date of when Smith would be able to return to work. (DPFOF ¶ 32.) Additionally, Smith's psychiatrist highlighted

numerous other limitations, including an inability to (1) complete tasks with short-term memory; (2) complete tasks that required attention to detail; (3) manage interpersonal connections with coworkers and the public; and (4) "handle multiple sensory stimuli in the work environment." (DPFOF ¶ 33.) Because Smith had been on an unapproved leave of absence since March 30, 2016, and his need for leave had no end in sight, Corrections determined that Warden William Pollard would be the most appropriate party to reach out to Smith next. (DPFOF ¶¶ 35-36.) As the appointing authority, Pollard had the ability to direct Smith to return to work or to provide additional information justifying his absence. (DPFOF ¶ 36.)

On May 2, 2016, Pollard sent Smith a letter, informing him that he was on an unapproved leave of absence and directing him to return to work on May 6, 2016, or provide a completed fitness for duty certification indicating why he was unable to return to work. (DPFOF ¶ 37.) Corrections received a letter from Smith's psychiatrist on May 6, 2016, stating that Smith needed "at least 3 months of therapy and medication management before considering returning to work." (DPFOF ¶ 43.) Smith's psychiatrist also provided Corrections with another copy of the April 6, 2016 fitness for duty certification he had previously provided. (DPFOF ¶ 44.) This new letter from Smith's psychiatrist left Corrections with the same questions as before. Corrections did not know how long Smith needed leave, except that it would be "*at least* 3 months" before he could work in any job. (DPFOF ¶ 45.) Similarly, the number and severity of Smith's restrictions made it impossible for Corrections to determine

what tasks, if any, Smith might be able to complete once he was cleared to return to work. (DPFOF ¶¶ 33-34.)

Corrections believed that Smith's extensive, unapproved leave of absence violated Corrections' workplace policies and initiated an investigation to explore Smith's use of unauthorized leave of absence. (DPFOF ¶¶ 50-52.) During the investigation, Smith was provided with the opportunity to interview, to explain his circumstances, and to provide any evidence of mitigating measures that should be taken into consideration in determining whether Smith violated Work Rule #31, a rule that disallowed unexcused absences or excessive absenteeism. (DPFOF ¶¶ 50, 52, 56-60.) The investigator concluded Smith's unapproved leave of absence violated Work Rule #31. (DPFOF ¶ 61.) Corrections employees reviewed the investigative summary, determined that Smith's unauthorized leave of absence violated Work Rule #31, and that termination was the appropriate disciplinary measure. (DPFOF ¶¶ 66-73.) Smith was terminated from his probationary employment on June 7, 2016. (DPFOF ¶ 75.) This lawsuit ensued. (Dkt. 7.)

Although Smith was ineligible for leave under the FMLA, having worked at Corrections for less than a year and a total of only 823.63 hours, he has sued Corrections and Pollard by arguing that they interfered with his rights to receive FMLA leave and later retaliated against him for making a request for leave under the statute. (DPFOF ¶¶ 1, 78-79; Dkt. 7 at ¶¶ 26-32, 42-50.) Similarly, despite Smith's inability to articulate a finite period of leave necessary for him to return to work; his inability to state what his limitations would be upon returning to work; and his lack

of any evidence that he submitted a request for accommodation to Corrections, Smith has sued Corrections and Pollard for violating his rights under the ADA and retaliating against him in violation of the statute. (DPFOF ¶¶ 31-34 45-46, 80-81, 84-85; Dkt. 7 at ¶¶ 21-25, 33-41.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "affidavits or declarations . . . or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c). In the summary judgment analysis, courts "construe all inferences in the non-movant's favor, but "[i]nferences that are supported only by speculation or conjecture will not defeat a summary judgment motion." *Decker v. Madison Cty. Sheriff's Office*, No. 13-CV-1234-SMY-SCW, 2016 WL 837955, at *3 (S.D. Ill. Mar. 4, 2016) (citing *Herzog v. Graphic Packaging Intern, Inc.,* 742 F.3d 802, 806 (7th Cir. 2014)). If there is no triable issue of fact on even one essential element of the non-movant's case, summary judgment is appropriate." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (internal citations omitted). "[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

## ARGUMENT

Smith alleges the Defendants intentionally discriminated against him in violation of Title I of the Americans with Disabilities Act (ADA), violated his rights under the self-care provision of the Family Medical Leave Act (FMLA), and retaliated

against him in violation of the ADA and FMLA. But Smith's FMLA interference claim and retaliation claims fail because he was never eligible for FMLA entitlements. Even if he was, the defendants have Eleventh Amendment immunity from claims under the FMLA's self-care provision.

The Eleventh Amendment also bars Smith's claims under Title I of the ADA. Under the exception to Eleventh Amendment immunity in *Ex Parte Young*, the only relief Smith may seek is injunctive relief to redress an ongoing violation of the federal statute. Smith will not be able to make such a case, nor does he seek such relief. Smith never requested an ADA accommodation from the Wisconsin Department of Corrections. To the extent the Court finds that he did, the ADA is an antidiscrimination statute, not a medical leave entitlement. The ADA forbids discrimination against a qualified individual with a disability and requires employers to provide reasonable accommodations. Smith's desired accommodation – indefinite leave from work – was not a reasonable accommodation because a reasonable accommodation will enable an employee to perform the essential functions of their job, i.e. to do their work.  Attendance was an essential function of Smith's position as a correctional officer at Dodge. Because Smith could not attend work, he could not perform the essential functions of his job with or without an accommodation. Therefore, he was not a qualified individual under the ADA and the Department lawfully terminated him. Smith's claims should be dismissed with prejudice.

**I.     Smith's FMLA interference claims must be dismissed on the merits because he was never eligible for FMLA entitlements.**

9

Smith's FMLA claims must be dismissed on the merits because he was never entitled to FMLA benefits. To be eligible for FMLA entitlements, an employee must be employed for at least 12 months by the employer and must work at least 1,250 hours. It is undisputed that Smith was not employed by the Department for at least 12 months, nor did he work at least 1,250 hours. This undisputed fact, alone, requires dismissal of his FMLA claims.

### A. Overview of FMLA definitions, prohibited acts, enforcement, and interpretation.

Under the FMLA, eligible employees are entitled to 12 weeks unpaid leave per year for various reasons, including a "serious health condition" rendering the employee unable to perform his or her job. 29 U.S.C. § 2612(a)(1)(D); *Byrne v. Avon Prods., Inc.,* 328 F.3d 379, 381 (7th Cir. 2003); *Stoops v. One Call Commc'ns, Inc.,* 141 F.3d 309, 312 (7th Cir.1998). To ensure this entitlement, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided," 29 U.S.C. § 2615(a)(1); *Nev. Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 724–25 (2003); *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 87 (2002); *King v. Preferred Tech. Group,* 166 F.3d 887, 891 (7th Cir.1999), including the right to reinstatement upon return from leave, 29 U.S.C. § 2614(a); *King,* 166 F.3d at 891; *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

The FMLA, 29 U.S.C. § 2611(2) defines "eligible employee" as follows:

**(A) In general**

The term "eligible employee" means an employee who has been employed—

> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

*See* 29 U.S.C. § 2611(2)(a).

Employer is defined in section 2611(4)(A), which includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such an employer." 29 U.S.C. § 2611(4)(A)(ii)(I). The FMLA definition of employer tracks word for word the definition used in the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d); 29 C.F.R. § 825.104(d) (explaining that the FMLA's individual liability provision mirrors the FLSA definition of employer and individual liability). Thus, courts have concluded that the term "employer" should be interpreted the same under both statutes. *See, e.g. Freemon v. Foley*, 911 F.Supp. 326, 330-31 (N.D. Ill. 1995); *Hemenway*, 2018 WL 6050906, *3-4.

Title 29 U.S.C. § 2615(a)(1) prohibits an "employer" from interfering, restraining, or denying the exercise of any right provided under this subchapter. Title 29 U.S.C. § 2615(a)(2) prohibits an "employer" from discharging or discriminating against any individual for opposing any practice made unlawful by this subchapter.[1]

Title 29 U.S.C. § 2617 provides the enforcement mechanisms for the rights under the subchapter, which includes a civil action by an employee:

**§ 2617. Enforcement**

**(a) Civil action by employees**

---

[1] Title 29 U.S.C. § 2615(b) also prohibits any "person" from discharging or discriminating against any individual because the individual filed a charge or related to this subchapter, or provided information in connection with an inquiry related to rights under this subchapter, or testified in an inquiry or proceeding related to rights under this subchapter.

**(1) Liability**

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(i) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii)[.] …; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

Based on the statute's language, an employee may only maintain a civil action against an "employer" for the remedies identified in Section 2617(a)(1).

Courts have interpreted the remedies available under the FMLA to include: "(1) compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost; and (2) "appropriate" equitable relief, including reinstatement. 29 U.S.C. § 2617(a)(1). Damages for emotional distress or punitive damages are not contemplated by the Act and thus are not available." *Simon v. Coop. Educ. Serv. Agency #5*, No. 18-CV-909-WMC, 2019 WL 7290841, *10 (W.D. Wis. Dec. 30, 2019 (citing *Arrigo v. Link*, 836 F.3d 787, 798 (7th

Cir. 2016) ("FMLA damages don't include emotional distress and punitive damages….")) The Seventh Circuit has also acknowledged that "both the structure and the legislative history of the FMLA suggest that Congress intended the remedial provisions of the FMLA to mirror those of the FLSA[.]" *Franzen v. Ellis Corp.*, 543 F.3d 420, 425 (7th Cir. 2008).

### B. Smith's self-care FMLA interference claims must be dismissed.

In order to prevail on a FMLA interference claim, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied his FMLA benefits to which he was entitled. *Guzman v. Brown Cty.*, 884 F.3d 633, 638–39 (7th Cir. 2018) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)). Smith's claims fail because he was not an "eligible employee" as that term is defined in the FMLA statute.

Smith's interference claim fails at the outset because he cannot meet the first element of his FMLA interference claim. It is undisputed that he had not been employed by the Department for at least 12 months, nor had he worked at least 1,250 hours of service. Because Smith cannot meet the eligibility requirement, his FMLA interference claims against the Department and Pollard must be dismissed. *See Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir.2009) ("To show a violation of FMLA rights, plaintiffs must show that they are eligible for FMLA protection.").

## II. Smith's FMLA retaliation claim must be dismissed because Smith never engaged in FMLA protected activity.

Smith's FMLA retaliation claim must also be dismissed because he never engaged in FMLA protected activity.

In addition to the substantive provisions of the FMLA discussed above, the Act makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Similarly, the Act makes it unlawful for any employer to "discharge" or "discriminate" against anyone for taking part in proceedings or inquiries under FMLA. 29 U.S.C. § 2615(b). The Seventh Circuit has construed these two provisions to create a cause of action for retaliation. 29 U.S.C. §§ 2615(a)(1), (2); *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir.2004); *King,* 166 F.3d at 891; *Kauffman*, 426 F.3d at 884.

To prove a retaliation claim under the FMLA, a plaintiff may proceed under the direct or indirect methods of proof to establish a prima facie case. *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009). Under the direct method of proof, a plaintiff must present evidence that: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action. *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (citations omitted). Additionally, the plaintiff can try to prove retaliatory intent indirectly by showing that he was performing his job satisfactorily but was treated differently from

similarly situated employees who did engage in FMLA protected activity. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012).

To bring a claim of retaliation under the FMLA, Smith first needs to prove that he was eligible for the FMLA's protections. *See Daugherty,* 577 F.3d at 750 ("To show a violation of FMLA rights, plaintiffs must show that they are eligible for FMLA protection"); *Long v. Teachers' Ret. Sys. of Ill.,* 585 F.3d 344, 350 (7th Cir.2009) ("An employer cannot retaliate if there is nothing for it to retaliate against."); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (retaliation claim failed where employee failed to show he engaged in FMLA-protected activity); *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) (employee could not have been fired for asserting rights under the FMLA where her request for leave was not protected); *see, also, Jones v. Villa*, No. 13-CV-1202, 2013 WL 6384540, at *3 (E.D. Wis. Dec. 6, 2013) (citing *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012).

For the same reasons argued above in section I, Smith wasn't eligible for FMLA entitlements, so he wasn't eligible for protection under the FMLA. *Nicholson*, 690 F.3d at 828. Therefore, Smith did not engage in any FMLA protected activity and his retaliation claims against the Department and Pollard fail. The Court should dismiss these claims with prejudice.

### III.    In the alternative, the Eleventh Amendment bars Smith's FMLA claims against the Department and Pollard.

Smith's self-care FMLA claims are barred by the Eleventh Amendment. The Department has sovereign immunity for self-care FMLA claims. *See Daugherty,* 577 F.3d at 750. The Seventh Circuit has not yet directly addressed the issue of Eleventh

Amendment immunity from individual liability FMLA claims against state actors, like Pollard. But it has addressed individual liability claims against state actors under the Fair Labor Standards Act (FLSA) and found sovereign immunity barred such claims. The definition of employer and the individual liability provisions under FMLA and FLSA are materially identical. Courts in this circuit have looked to decisions interpreting FLSA as the best guidance for construing these provisions in the FMLA. *See, e.g., Hemenway v. Rock County*, Case No. 18-CV-307-JDP, 2018 WL 6050906, *4 (W.D. Wis. Nov. 19, 2018); *Bornick v. Sondalle*, 179 F. Supp. 2d 941, 947-48 (E.D. Wis. 2001). For the same reasons the Seventh Circuit held that sovereign immunity barred the FLSA claims for individual liability against state actors, the Court should conclude sovereign immunity applies to Smith's FLMA claims against Pollard.

### A. Smith's FMLA claim against the Department is barred by Eleventh Amendment sovereign immunity.

Sovereign immunity bars Smith's self-care FMLA claim against the Department. *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 33 (2012).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well-settled law that the Eleventh Amendment applies to suits against a state by one of its own citizens, *Welch v. Texas Dept. of Highways & Public Transportation*, 483 U.S. 468, 472 (1987), and to any suit brought by a private party seeking to impose liability on

a state agency that must be paid from public funds in the state treasury, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment is not limited to damages judgments. It also applies to injunctive suits against the states. *Pennhurst State School & Hospital v. Halderman, supra*, 465 U.S. at 100, 104 S.Ct. 900; *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir.1993).

The Department of Corrections is a Wisconsin state agency. *See* Wis. Stat. § 15.14. Sovereign immunity extends to all arms of the state, which include state agencies, such as the Department. *Kashani v. Purdue University*, 813 F.2d 843, 845 (7th Cir. 1987). Accordingly, the Department, as an arm of the State of Wisconsin, cannot be sued in federal court unless one of the exceptions to sovereign immunity applies.

A state's sovereign immunity can be limited in only a few circumstances: (1) by a valid exercise of congressional power;[2] (2) by the state's consent to suit in federal court;[3] and (3) by the state's decision to participate in a federal program clearly conditioned on such a waiver. *Edelman*, 415 U.S. 673-74. The exception relevant here is whether the Department's sovereign immunity was abrogated by a valid exercise of congressional power. The Supreme Court addressed this issue with respect to the self-care provision of the FMLA in *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 33 (2012). The Court concluded that the self-care provision of the FMLA was not a valid abrogation of States' immunity by Congress and held that suits against States

---

[2] *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1985).
[3] *Lapides*, 535 U.S. at 623.

under this provision are barred by the States' immunity as sovereigns in our federal system. *Id.*

The *Coleman* decision expressly agreed with the Seventh Circuit's decision in *Toeller v. Wisconsin Department of Corrections,* 461 F.3d 871 (7th Cir. 2006). *Id.* In *Toeller*, an employee of the State of Wisconsin sued the Department of Corrections (DOC) under the FMLA. The plaintiff took unpaid medical leave under the self-care provisions of the FMLA. After his return his employment was terminated for disciplinary reasons. *Id.* at 873. Holding the Eleventh Amendment barred Toeller's claim, the Seventh Circuit concluded Congress did not validly abrogate the States' sovereign immunity regarding the FMLA's self-care provisions, and therefore, the plaintiff's claim against DOC required dismissal. *See id.* at 873, 876.

Here, Smith alleges that "as a result of his depression and mental health disability, plaintiff was unable to work and therefore perform a major life activity."[4] He further alleges that "at all material times, Smith was entitled to medical leave under the FMLA."[5] Because Smith's FMLA claims are self-care provision claims, they are barred against the Department by Eleventh Amendment immunity and must be dismissed with prejudice.

**B.  Smith's self-care FMLA claim against Pollard is barred by Eleventh Amendment immunity.**

Smith alleges that Pollard interfered with his rights under the FMLA and retaliated against him for using FMLA leave.[6] Smith's self-care FMLA claim against

---

[4] Amended Complaint ¶ 12, dkt. 7:3.
[5] Amended Complaint ¶ 28, dkt. 7:5.
[6] Amended Complaint, Counts II & IV, dkt. 7:5-7.

Pollard is also barred by Eleventh Amendment immunity. In Smith's amended complaint, he did not specify whether he sued Pollard in his individual or official capacity. But Pollard is entitled to Eleventh Amendment immunity in both capacities.

### 1. Smith's individual capacity claim for damages against Pollard is barred by sovereign immunity.

Smith's claim for damages against Pollard in his individual capacity is barred by the Eleventh Amendment. The Seventh Circuit has yet to directly address whether state officials sued in their individual capacity under the FMLA have sovereign immunity. But the Seventh Circuit has addressed the question of sovereign immunity for individual capacity claims against state supervisory officials in the context of the FLSA—the law that FMLA mirrors with respect to its remedial provision and definition of employer.[7] In the FLSA context, the Seventh Circuit held that state officials had Eleventh Amendment immunity from individual capacity claims. *Luder v. Endicott*, 253 F.3d 1020, 1023-25 (7th Cir. 2001). The Court should likewise conclude that Eleventh Amendment immunity bars Smith's individual capacity claim against Pollard under the FMLA self-care provision.

In *Luder*, the Seventh Circuit found that Eleventh Amendment immunity barred the plaintiffs' individual capacity claims against several state officials because the suit demonstrably had the identical effect as a suit against the state, *i.e.* the plaintiffs were seeking to force the state to accede to their view of the FLSA and to pay them accordingly. *Id.* The plaintiffs were 145 employees of a Wisconsin state

---

[7] *See* Section I.A above; *see, also,* 29 C.F.R. § 825.104(d); *Franzen*, 543 F.3d at 425; *Hemenway,* 2018 WL 6050906, *4.

prison, and they sought damages against the warden, deputy warden, and personnel officers of the prison, all in their individual capacities. *Id.* at 1021. The plaintiffs claimed that the defendants forced them to work before and after their official shifts without paying them. *Id.* at 1022.

> The *Luder* court held:
>
> But even when a suit is against a public officer in his or her individual capacity, the court is obliged to consider whether it may really and substantially be against the state. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 286 (5th Cir.2000). "[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)

*Id.* at 1023. The court concluded that "a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is, we think, barred." *Id.*

In concluding the *Luder* plaintiffs' claim was barred, the court found it compelling that the plaintiffs sought to accomplish exactly what they would accomplish were they allowed to maintain the suit against the state. *Id.* at 1024. If the suit was allowed to go forward to judgment for the plaintiffs, the state would be forced to pay the plaintiffs the additional wages they sought, which would flow from the state treasury to the plaintiffs. *Id.* at 1024; *see, also, Haynes v. Indiana Univ.*, 902 F.3d 724, 731-32 (7th Cir. 2018) (Sovereign immunity bars former professor's 42 U.S.C. § 1981 claim for monetary relief against administrators in their individual capacities for injury relating to his employment with Indiana University); *Omosegbon*

*v. Wells*, 335 F.3d 668, 672-76 (7th Cir. 2003) (Terminated professor could not maintain 42 U.S.C. § 1983 suit against state university officials in their individual capacities, where he sought backpay and other forms of monetary compensation based on an employment contract because any resulting judgment will be paid by the state and the individual defendants were not parties to the contract in their individual capacities.)

The same is true here. Smith's employer was the State of Wisconsin, Department of Corrections. Former Dodge Correctional Institution Warden Marc Clements was the warden at the time of Smith's transfer to Dodge, and Clements signed the letter confirming Smith's transfer to the Correctional Officer position effective January 10, 2016.[8] Warden Pollard did not work at Dodge at the time, so he was not a party to the employment contract. As for remedies, Smith seeks damages in the form of lost wages, benefits, front pay and/or reinstatement, and also other damages not allowed under the FMLA.[9] If this case were allowed to proceed to judgment in Smith's favor, the lost wages Smith seeks would, of course, flow from the state treasury to Smith.

For this reason, the Eleventh Amendment bars Smith's FMLA individual capacity claims against Pollard, and the Court should dismiss these claims with prejudice.

---

[8] DPFOF ¶ 15.

[9] Smith seeks damages for emotional distress and punitive damages, but the FMLA doesn't allow for such types of damages. *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016) ("FMLA damages don't include emotional distress and punitive damages....")

## 2. Smith's official capacity FMLA claim against Pollard.

An official capacity suit against a state official is not a suit against the official but rather is a suit against the official's office, and "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67, 71 (1989). Thus, the Eleventh Amendment bars actions in federal court against state officials sued in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Will,* 491 U.S. at 70-71; *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) (state officials sued in their official capacities cannot be sued for money damages). Here, the Supreme Court has already concluded that the state has Eleventh Amendment immunity from suits under the self-care provision of the FMLA and this immunity applies equally to state actors sued in their official capacities. *Coleman*, 566 U.S. at 33; *Will,* 491 U.S. at 71.

State employees may be sued in their official capacities in federal court, but *only* for prospective relief to end ongoing violations of federal constitutional law or statutory provisions. *Ex parte Young*, 209 U.S. 123, 156-57 (1908). To avoid the Eleventh Amendment bar, a plaintiff must allege that the state officer is currently acting in violation of federal law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The complaint must seek prospective relief to address this ongoing violation, not compensation or other retrospective relief for violations past. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Quern v. Jordan*, 440 U.S. 332, 346-49 (1979). As the Seventh Circuit has explained, "In determining whether the doctrine of *Ex parte Young* avoids

an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (citing *Verizon Maryland Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 645 (2002)).When the plaintiff does not allege an "ongoing violation of federal law," a federal court may not issue equitable relief. *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986). "To take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law." *David B. v. McDonald,* 156 F.3d 780, 783 (7th Cir. 1998).

Here, the only relief Smith seeks is retrospective relief for alleged violations past. Smith's amended complaint alleges no ongoing violation of federal law, which is required in order to avoid Eleventh Amendment immunity. *Peirick v. Indiana Univ.-Purtue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). And while he asks for reinstatement, it is to remedy an alleged past violation of the FMLA. Because Smith no longer works at the Department, he does not face any ongoing alleged violations, nor is he at imminent risk of future alleged violations of the FMLA self-care provision from Pollard.

In *Sonnleitner v. York*, 304 F.3d 704 (7th Cir. 2002), the court affirmed dismissal of Sonnleitner's official capacity claim for injunctive relief requesting reinstatement to a supervisory position based on alleged procedural due process violations when he was improperly demoted without a predisciplinary hearing

depriving him of his right to be a supervisor. The Seventh Circuit acknowledged that Sonnleitner's request for reinstatement can "certainly be characterized as prospective relief," but it ultimately held: "we do not believe that the underlying procedural due process claim can be reasonably construed as 'ongoing.'" *Id.* at 718. The court reasoned, "the violation was not the demotion as such, but, instead, the fact that the demotion occurred without an adequate opportunity to be heard, either through an additional predisciplinary hearing or a sufficiently prompt post-disciplinary hearing." *Id.* The court found that the allegations alleged, at most, a past rather than ongoing violation of federal law. *Id.* Because the allegations did not fit the narrow exception of *Ex Parte Young*, the Seventh Circuit concluded the official capacity claims were barred by the Eleventh Amendment. *Id.* at 718-19.

The same is true here. Smith's amended complaint alleges that Pollard purportedly interfered with Smith's rights under the FMLA and retaliated against him for purportedly exercising his rights under the FMLA.[10] These alleged violations occurred in the past. So even though Smith vaguely requests reinstatement in his amended complaint, reinstatement would only be to remedy the past alleged violations of the FMLA. *Sonnleitner*, 304 F.3d at 718-19.

In addition, the FMLA remedial section provides no relief for an employer's interference with an employee's substantive rights, unless the employee can prove he was prejudiced by the violation. *Franzen*, 543 F.3d at 426 (citing 29 U.S.C. § 2617; *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002). The Seventh Circuit

---

[10] Amended Complaint, Counts II and IV, dkt. 7:6-8.

has held that an employee "has no right to reinstatement—and, therefore, damages—if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job." *Id.* (citing 29 C.F.R. § 825.214(b); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005). Accordingly, if Smith was either unwilling or unable to return to work at the expiration of his 12 weeks, the Department "lawfully could have terminated his employment, and he would not be entitled to damages resulting from this termination." *Id.* Here Smith was out of work beginning on March 13, 2016, and as of May 6, 2016, his doctor opined that he would need at least three more months of time off, but with no end-date reported. Indeed, the date that Smith was terminated from his probationary employment—June 7th—is exactly 12 weeks and 1 day from March 14th. So even if Smith was entitled to exercise rights under the FMLA self-care provision--which he was not—there was no violation because the Defendant did, in fact, allow him 12 weeks of leave. Under no circumstances can Smith prevail on his FMLA interference claim.

It also appears unlikely that Smith continues to seek reinstatement as a remedy in this case. Smith is currently employed. Since August of 2018, he has been a parent coordinator at Milwaukee Public Schools.[11] It's a full-time job with benefits, and he gets paid more than he did as a correctional officer at Dodge.[12] Smith likes his current job, and he likes going to work every day.[13] So, at this point, it's doubtful that

---

[11] DPFOF ¶ 87.
[12] DPFOF ¶ 87; Beier Decl. 1012 at 1.
[13] DPFOF ¶ 87.

Smith seeks reinstatement to the Department of Corrections. Because reinstatement is the only relief that can be characterized as prospective, it is merely speculative that his injury would be redressed by a favorable decision. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (To establish Article III standing for a claim for prospective relief, a plaintiff must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.")

Smith has not alleged any ongoing violation of federal law, he does not seek injunctive relief, nor could he obtain injunctive relief. Smith's official capacity FMLA claim against Pollard must be dismissed.

## IV. Smith's ADA claims against the Department are barred by the Eleventh Amendment.

Smith next brings claims under Title I of the ADA against the Department and Pollard. Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability in regard to hiring, discharging, compensation, and other employment actions. 42 U.S.C. § 12112(a). The Eleventh Amendment bars actions in federal court against the States or arms of the States alleging violations of Title I of the ADA. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). As discussed above, the Department of Corrections is an arm of the State of Wisconsin, and none of the exceptions to Eleventh Amendment immunity apply to Smith's claims under the ADA. Therefore, Smith's ADA claims against the Department must be dismissed.

## V.    Smith's ADA claims against Pollard must be dismissed.

Smith's ADA claims against Pollard must be dismissed regardless of whether he sued Pollard in his individual or official capacity.

### A.    Smith cannot proceed on an ADA claim against Pollard in his individual capacity.

If Smith sued Pollard in his individual capacity, the claims must be dismissed because the ADA provides for liability only with regard to the plaintiff's employer, not the plaintiff's supervisors or other individuals working for the plaintiff's employer. *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("[T]he ADA provides only for employer, not individual, liability. Our case law is clear that a supervisor cannot be held liable in his individual capacity under the ADA or under Title VII."); *see, also, EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-1282 (7th Cir. 1995). Thus, any individual capacity claim under the ADA against Pollard must be dismissed.

### B.    Smith's official capacity claims under the ADA against Pollard must be dismissed because he does not allege any ongoing violation of the ADA.

If Smith sued Pollard in his official capacity, then the same Eleventh Amendment analysis discussed above in Section III.B.2 applies to Smith's claim against Pollard under the ADA. Smith must allege an ongoing violation of the ADA for his official capacity claim against Pollard to survive. Smith will not be able to do so here.

The Eleventh Amendment bars action against state officials sued in their official capacities for money damages. *See Will v. Mich. Dep't of State Police*, 491 U.S.

27

58, 70-71 (1989); *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) (state officials sued in their official capacities cannot be sued for money damages). But if a plaintiff seeks only prospective injunctive relief to address an ongoing violation of the ADA, he may avoid the Eleventh Amendment and his claim may proceed. *See Ex parte Young*, 209 U.S. 123, 156-57 (1908); *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). As stated in Section III.B.2, Smith's claims do not involve any ongoing violation of the ADA, nor does he seek prospective injunctive relief. The Court should dismiss Smith's ADA claims against Pollard.

## VI.   Smith's ADA claims fail on the merits because he was not a qualified individual with a disability.

Even if Smith court bring an ADA claim, it would fail on the merits because he was not a qualified individual with a disability. Smith appears to allege three claims under the ADA: (1) the defendants failed to accommodate his disability with multi-month leave; (2) terminated him on the basis of his disability; and (3) retaliated against him for attempting to use leave to accommodate his disability. But Smith's claims fail because the ADA is an antidiscrimination statute, not a medical leave entitlement. The Seventh Circuit holds that "A multimonth leave of absence is beyond the scope of a reasonable accommodation under the ADA." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 479, 479 (7th Cir. 2017) (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). An employee who needs long-term medical leave cannot work and thus is not a qualified individual under the ADA. *Id.*

## A.  Smith's failure to accommodate claim fails.

Smith's failure to accommodate claim fails because he was not a "qualified individual" under the ADA. Title I of the ADA forbids discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). The Seventh Circuit holds that, "So defined, the term 'reasonable accommodation' is expressly limited to those measures that will enable the employee to work." *Severson*, 872 F.3d at 479. "If the proposed accommodation does not make it possible for the employee to perform his job, then the employee is not a 'qualified individual' as that term is defined in the ADA." *Severson*, 872 F.3d at 481. "Whether an individual is a qualified individual with a disability is determined at the time of the employment decision." *Hamm v. Exxon Mobil Corp.*, 223 Fed. Appx. 506, 508 (7th Cir. 2007).

In *Severson*, the Seventh Circuit held that a long-term leave of absence cannot be a reasonable accommodation:

> As we noted in *Byrne*, "[n]ot working is not a means to perform the job's essential functions." 328 F.3d at 381. Simply put, an extended leave of absence does not give a disabled individual the means to work; it excuses his not working. Accordingly, we held in *Byrne* that "[a]n inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability." *Id.*; *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.").
>
> *Byrne* leaves open the possibility that a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances. … Intermittent time off or a short leave of

absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances, be analogous to a part-time or modified work schedule, two of the examples listed in § 12111(9). But a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job. To the contrary, the "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Id.*

Long-term medical leave is the domain of the FMLA[.] … The FMLA protects up to 12 weeks of medical leave, recognizing that employees will sometimes be *unable* to perform their job duties due to a serious health condition. In contrast, "the ADA applies only to those who can do the job." *Byrne*, 328 F.3d at 381.

*Severson*, 872 F.3d at 481.

Here, Smith never asked for an accommodation for his disability, he asked for multiple months of medical leave. Even if the Court construes this as a request for an accommodation, Smith's claim fails because, at the time the Department terminated him, he was not qualified to perform the essential functions of his job, which necessarily required his attendance at the prison to supervise the prisoners. Smith was off work from March 14 through June 7, 2016, when he was terminated. As of May 6, 2016, Smith's psychiatrist reported that he needed at least three months of therapy and medication management before even considering returning to work. So at the time Smith was terminated on June 7th, he was not qualified individual under the ADA because he was unable to perform the essential functions of his job with or without an accommodation. Smith's failure to accommodate claim fails. Here, as in *Severson*, there was no end in sight to Smith's medical need, because the return date kept on being moved back.

### B. Smith's discriminatory termination claim under the ADA fails.

Smith's claim that Pollard intentionally discriminated against him on the basis of his disability by terminating his employment fails for similar reasons.

"A fired (demoted, etc.) worker who cannot do the job even with a reasonable accommodation has no claim under the ADA." *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195 (7th Cir. 1997) (citing *Weigel v. Target Stores,* 122 F.3d 461, 468 (7th Cir.1997); *Palmer v. Circuit Court,* 117 F.3d 351, 352 (7th Cir.1997). The Act forbids discrimination against a "qualified" individual "because of the disability of such individual." 42 U.S.C. § 12112(a). "An individual who cannot perform the essential functions of the job even with a reasonable accommodation to his disability by the employer is not 'qualified,' 42 U.S.C. § 12111(8), so the ADA does not come into play." *Matthews*, 128 F.3d at 1195. "It is irrelevant that the lack of qualification is due entirely to a disability." *Id.* A blind person cannot complain because a prison refuses to hire him as a guard. *Miller v. Illinois Dept. of Corrections*, 107 F.3d 483, 487 (7th Cir.1997). An alcoholic cannot complain about a trucking company's refusal to hire him as a driver because as a consequence of his alcoholism his driving license has been revoked. *Despears v. Milwaukee County*, 63 F.3d 635, 636–37 (7th Cir.1995). If an insulin-dependent diabetic cannot be depended upon to drive a bus safely, he cannot complain about being disqualified from working as a bus driver, *Daugherty v. City of El Paso*, 56 F.3d 695, 698 (5th Cir. 1995); *Myers v. Hose*, 50 F.3d 278, 282 (4th Cir. 1995), even though he can show that he would be fully qualified were it not for his being a diabetic.

Here, Smith was terminated from his probationary employment as a correctional officer at Dodge because he could not perform the essential functions of his job. It makes no difference that his inability to perform his job was due to his disability. For the same reason that Smith's failure to accommodate claim fails, his discriminatory termination claim also fails.

### C.     Smith's ADA retaliation claim fails.

Smith's ADA retaliation claim also fails because he never engaged in a protected activity and the defendants terminated him because he was not qualified to perform the job duties of a correctional officer.

Retaliation claims under the ADA require three elements: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action. *Freelain*, 888 F.3d at 901. Here, Smith never engaged in statutorily protected activity because he never requested an accommodation for a disability. In addition, he was terminated for a legitimate reason: he could not work and, therefore, he was not qualified to perform his job at the time he was terminated.

Smith's ADA retaliation claim against Pollard fails and the Court should dismiss it with prejudice.

### CONCLUSION

The defendants request the Court to grant their motion for summary judgment and dismiss Smith's claims, with prejudice.

Dated this 13th day of March, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin


s/Rachel L. Bachhuber
RACHEL L. BACHHUBER
Assistant Attorney General
State Bar #1052533

s/Jeffery A. Simcox
JEFFERY A. SIMCOX
Assistant Attorney General
State Bar #1116949

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0188 (Bachhuber)
(608) 266-3861 (Simcox)
(608) 267-8906 (Fax)
bachhuberrl@doj.state.wi.us
simcoxja@doj.state.wi.us

33